**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DOROTHY S. KOST,** | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:16-2008 |
| v. | : | (JUDGE MANNION) |
| **WILLIAM BALDWIN and SCHUYLKILL COUNTY BAR ASSOCIATION,** | : : | |
| Defendants | : | |

## MEMORANDUM

Pending before the court are a motion to dismiss the plaintiff's complaint brought on behalf of defendant Baldwin, (Doc. 9), and a motion to dismiss the plaintiff's complaint brought on behalf of defendant Schuylkill County Bar Association, ("SCBA"), (Doc. 10). Upon review of the defendants' motions and the materials related thereto, defendant Baldwin's motion will be granted in part and denied in part as discussed herein, and defendant SCBA's motion will be granted.

### I. PROCEDURAL HISTORY

By way of relevant background, on October 3, 2016, the plaintiff filed the instant civil rights action pursuant to 42 U.S.C. §1983, in which she alleges that defendant Baldwin, the President Judge of the Court of Common Pleas of Schuylkill County, and defendant SCBA, a non-profit 501(c)(3) association,

acted together in terminating her from her part-time employment as the Executive Director of the SCBA, in violation of her constitutional right to intimate association under the First Amendment, and in violation of her constitutional right to quit employment under the 13th Amendment.

Defendant Baldwin and defendant SCBA filed motions to dismiss the plaintiff's complaint on November 7, 2016, (Doc. 9, Doc. 10). Briefs in support of these motions were filed on November 21, 2016. (Doc. 17, Doc. 15 respectively). On December 5, 2016, the plaintiff filed a combined brief in opposition to the defendants' motions. (Doc. 19). Reply briefs were filed by defendant Baldwin and defendant SCBA on December 15, 2016. (Doc. 21, Doc. 22).

## II.     LEGAL STANDARD

The defendants' motions to dismiss are brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state

a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged

3

in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. *See*, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

## III. DISCUSSION

In Count One of her complaint, the plaintiff alleges that she had worked concurrently for two employers.[1] She worked 35 hours per week for Schuylkill County as a law librarian assigned to the judiciary for approximately 39 years.

---

[1]The allegations taken from the plaintiff's complaint are accepted as true for purposes of the instant motions to dismiss.

4

Her last day of employment with the County was February 24, 2015. The plaintiff alleges that she left her position with Schuylkill County after her husband had fallen ill and, as a consequence, they encountered financial difficulties. This resulted in their home being placed in foreclosure proceedings. She alleges that she retired in order to take a lump sum option which was sufficient to prevent foreclosure on their home.

The plaintiff also worked for defendant SCBA in a part-time capacity as Executive Director for approximately 17 years. She alleges that she intended to stay in that position once she retired from the County. However, the plaintiff alleges that she was terminated from that position on March 4, 2015. According to the plaintiff, this termination was at the insistence of defendant Baldwin.

Upon notifying defendant Baldwin that she was retiring, the plaintiff's complaint provides that he "took great offense and umbrage at the prospect, and admonished her for leaving her employment with him in order to save her house." The plaintiff explained that she wanted to continue working for the defendant SCBA and noted that, at one time, if you were a law librarian, you were also employed by the bar association. However, according to the plaintiff, defendant Baldwin told her that the positions with the County and the defendant SCBA were separate, there was no requirement that she hold both

jobs, and that he would not interfere with her continued employment with the defendant SCBA.

After her meeting with defendant Baldwin, the plaintiff alleges that she received an email indicating that her email account was being shut down and her security access card was being inactivated. Later, she received an email from the Court Administrator forbidding her to do bar association work in the law library, despite the fact that the defendant SCBA had been working out of the law library for approximately 17 years. The plaintiff was given until March 4, 2015 to separate law library and bar association paperwork.

The plaintiff alleges that she had discussed her mortgage foreclosure with the bar association president, as well as other bar association board members, and that they all assured that it would not be a problem as far as her employment. Despite this assurance, after a regularly scheduled board meeting on March 4, 2015, the plaintiff was asked to leave so that the board could go into an executive session. Thereafter, the plaintiff was called back into the room where she was informed by the board president that she was being terminated as of that day. The plaintiff alleges that she was subsequently informed by the bar association's assistant director "that the bar association leadership did what they could to keep her employed, but Defendant, Baldwin, said she could not stay." The plaintiff then learned that

the current and past presidents of the bar association talked to the County Commissioners and with defendant Baldwin in an attempt to keep the plaintiff employed, but that defendant Baldwin was "adamant" that the plaintiff was to be terminated. The plaintiff alleges that defendant Baldwin used the power of his office to get an independent third party to terminate her employment, even though it was outside of his authority to do so. She further alleges that the actions of defendant Baldwin in pressuring the defendant SCBA to terminate her employment were arbitrary, capricious and unreasonable and designed to retaliate against her for exercising her right to marital privacy and right to associate with her spouse, as well as her right to quit her position as a law librarian.

After causing her termination, the plaintiff alleges that defendant Baldwin then attempted to cause her further financial damage by trying to deny her unemployment compensation. The plaintiff alleges that, at the insistence of defendant Baldwin, the defendant SCBA attempted to contest the plaintiff's right to unemployment compensation. Moreover, according to the plaintiff, defendant Baldwin appeared at her unemployment compensation hearing and attempted to inject himself in to that proceeding, which only involved the plaintiff and defendant SCBA. The plaintiff alleges, on July 15, 2015, the unemployment compensation referee determined that her

termination was not due to willful misconduct on her part and granted her benefits.

In Count Two of her complaint against both defendants, the plaintiff alleges that, although defendant SCBA was a voluntary association of lawyers, it ultimately entered into an agreement with defendant Baldwin to terminate her employment. By entering into such an agreement, the plaintiff alleges that defendant SCBA "put on the mantle of government authority making it a state actor."

In Count Three of her complaint, the plaintiff alleges tortious interference with an employment contract against defendant Baldwin. Here, the plaintiff alleges that, at all relevant times, defendant Baldwin acted outside of the scope and protection as a member of the judiciary and acted solely in his private capacity. The plaintiff alleges that defendant Baldwin interfered with her job as Executive Director of the SCBA by having her terminated. Specifically, using Section 765 of the Restatement Second of Torts as a guide, the plaintiff alleges:

1. There was a longstanding employment contract between Plaintiff and Defendant, Bar.
2. Plaintiff and Defendant, Bar, intended to maintain that employment.
3. Defendant, Baldwin, was not involved in that employment relationship, and was not a decision-maker.
4. Defendant, Baldwin, purposefully contacted Plaintiff's employer for the purpose of securing her termination.

5. Defendant, Baldwin, intended to hurt Plaintiff, solely because she quit her job as law librarian under his jurisdiction.
6. The Plaintiff had the constitutional right to quit working for the County of Schuylkill and only work for the Defendant, Bar, and her reasons were valid.
7. There is a close proximity [eight days] between Plaintiff's voluntary departure from her job with Schuylkill County and the involuntary loss of job with Defendant, Bar.

In the final count of her complaint against the defendant SCBA, the plaintiff alleges a "*prima facie* tort". To this extent, the plaintiff alleges that the defendant SCBA terminated her employment without excuse or justification and only to "curry favor with a trial judge". Given this, the plaintiff alleges that the defendant SCBA is liable under the Restatement Second of Torts, Section 46, for intentional infliction of emotional distress, ("IIED").

### A. Defendant Baldwin's Motion to Dismiss

In his motion to dismiss the plaintiff's complaint, defendant Baldwin initially argues that, in his official capacity, all claims against him are barred by the Eleventh Amendment and he is not a person under §1983. With respect to this argument, it does not appear that the plaintiff is suing defendant Baldwin in his official capacity. In fact, the plaintiff alleges in her complaint that "at no time herein was the Defendant, Baldwin, acting in his official capacity as a State Judge, but rather he used and abused his official

position to act on his own personal idiosyncrasies." The plaintiff further alleges that defendant Baldwin "was acting outside the scope and protection as a member of this judiciary as the term is used at 42 Pa.C.S.A. §8501, and acting solely in his private capacity as an individual." Because there is no indication that the plaintiff is bringing the instant action against defendant Baldwin in his official capacity, this portion of defendant Baldwin's motion will be denied.[2]

Defendant Baldwin also argues that he is entitled to sovereign immunity in his official and individual capacity. Once again, the plaintiff does not appear to be bringing the instant action against defendant Baldwin in his official capacity. As to the individual capacity claims, sovereign immunity bars liability for intentional acts committed within the scope of employment. La Frankie v. Miklich, 618 A.2d 1145 (Pa.Cmwlth. 1992). Defendant Baldwin argues that, as president judge, he is the executive and administrative head of the court and oversees the running of the courthouse and managing of all activities within the judicial district, including that which occurs within the law library at the Schuylkill County Court of Common Pleas. He argues that the allegations

---

[2]To the extent that the plaintiff is suing defendant Baldwin in his individual capacity, Eleventh Amendment immunity does not bar suit against state officials in their individual capacities. See Kentucky v. Graham, 473 U.S. 159, 165-68 (1985); Laskaris v. Thornburgh, 661 F.2d 23, 26 (3d Cir. 1981).

against him relate to the scope of his authority as president judge. However, the plaintiff specifically alleges in her complaint that defendant Baldwin was acting outside of the scope of his authority. To this extent, she alleges that her positions with the County as a law librarian and with the SCBA as executive director were separate and distinct, as were her employers for those positions. The plaintiff alleges that defendant Baldwin acknowledged this and indicated that he had nothing to do with the SCBA. Despite this, the plaintiff alleges that defendant Baldwin interfered with her employment with defendant SCBA by improperly using his position to convince defendant SCBA to terminate her employment. Accordingly, defendant Baldwin's motion will be denied on this basis as well.

Defendant Baldwin next argues that the plaintiff's complaint fails to state a claim under the First, Fourteenth or Thirteenth Amendments upon which relief can be granted. To the extent that the plaintiff alleges an intimate association retaliation claim under either the First or Fourteenth Amendment[3],

---

[3] The Supreme Court's decisions do not clearly indicate whether the right to marital or intimate association is rooted in the First Amendment, the Fourteenth Amendment, or both. The Court's discussion of the right to intimate association in Roberts is supported mainly by citations to cases rooted in the Fourteenth Amendment. See Roberts v. U.S. Jaycees, 468 U.S. 608, 617-18 (1984) (citations omitted). Notwithstanding, Supreme Court cases following Roberts suggest that the right to intimate association has roots in the First Amendment as well. See Bd. of Dir. of Rotary Internat'l v. Rotary
(continued...)

11

defendant Baldwin provides that the plaintiff must establish that: (1) she engaged in conduct or speech protected by the First Amendment; (2) the government responded with retaliatory action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights; and (3) the protected activity caused the retaliation. Thomas v. Independence Township, 463 F.3d 285, 296 (3d Cir. 2006). Defendant Baldwin argues that the plaintiff does not meet any of these elements.

There is no doubt that the plaintiff enjoys the right to intimate association in relation to her marriage which she claims she was exercising at all relevant times. See Roberts v. U.S. Jaycees, supra. It is alleged that the

---

[3](...continued)
Club of Durante, 481 U.S. 537, 545 (1987); City of Dallas v. Stanglin, 490 U.S. 19, 25 (1989); Boy Scouts of America v. Dale, 530 U.S. 640, 698 n. 26 (2000)

There appears to be a circuit split on the issue with the majority of circuits, including the Third Circuit, finding a right to intimate association protected under the First Amendment, as well as an intimate association or privacy right protected under the Fourteenth Amendment substantive due process clause. See generally Nancy Catherine Marcus, The Freedom of Intimate Association in the Twenty First Century, 16 GEO. MASON U. CIV. RTS. L.J. 269, 287 & n. 95 (2006) (noting the split). Cases in Middle District of Pennsylvania provide that it is the First Amendment which protects the freedom of intimate association. See e.g., Mills v. City of Harrisburg, 589 F.Supp.2d 544, 554 n. 9 (M.D.Pa. 2008) (rejecting First Amendment right of intimate association claim by plaintiff charged with patronizing a prostitute); Schultz v. Wilson, 2007 WL 4276696 at *9 (M.D.Pa. Dec. 4, 2007) (First Amendment association claim fails under either expressive or intimate association theory).

plaintiff was fired from her position with the defendant SCBA, allegedly at the behest of defendant Baldwin after exercising this right, which would be an action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights. However, completely missing from the plaintiff's retaliation claim is any sufficient causal connection. To this extent, the plaintiff does not provide any factual support for her claim that defendant Baldwin took the actions he allegedly did because the plaintiff had exercised her right to marital or intimate association. The plaintiff instead alleges in her complaint that "[f]or reasons known only to him . . . [defendant Baldwin] . . . decided to punish Plaintiff for quitting her job as law librarian." She goes on to allege that defendant Baldwin contacted the defendant SCBA to secure her termination and intended to hurt her "solely because she quit her job as law librarian under his jurisdiction." Such factual allegations do not sufficiently allege that the plaintiff's marital or intimate association had anything to do with defendant Baldwin's alleged actions.

Moreover, there is some guidance for the notion that, in making an intimate association claim, the plaintiff must establish that the challenged action "directly and substantially interfered with" the intimate relationship. See Freebery v. Coons, 589 F.Supp.2d 409, 421 (D.Del. 2008) (quoting Lyng v. Int'l Union, et al., 485 U.S. 360, 365 (1988)), *aff'd*, 355 Fed.Appx. 645 (3d Cir.

2009). The plaintiff has made no such allegations in this case.

Since the plaintiff has failed to allege a sufficient causal connection between the exercise of her constitutional right to intimate association and her termination from employment at the SCBA, and has failed to allege that the challenged action had any direct or substantial interference on her relationship, defendant Baldwin's motion to dismiss will be granted and the plaintiff's complaint dismissed, with prejudice, on this basis.

To the extent that the plaintiff attempts to allege a Thirteenth Amendment claim, the Thirteenth Amendment states:

> Section 1. Neither slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.
>
> Section 2. Congress shall have the power to enforce this article by appropriate legislation.

U.S. Const. Amendment XIII. As the Supreme Court has acknowledged, the Thirteenth Amendment was adopted with the "general intent to prohibit conditions 'akin to African slavery . . .'" United States v. Kozminski, 487 U.S. 931 (1988) (quoting Butler v. Perry, 240 U.S. 328, 332-333 (1916)).

Defendant Baldwin argues that there are no specific allegations showing that the plaintiff was required to continue working either by force or threat of force, or was otherwise forced to perform "involuntary servitude". See United

States v. Kozminski, supra.; Steirer v. Bethlehem Area School Dist., 987 F.2d 989 (3d Cir. 1993), *abrogated on other grounds*, Troster v. Pa. State Dep't Corr., 65 F.3d 1086, 1090 (3d Cir. 1995); United States v. Bertoli, 994 F.2d 1002 (3d Cir. 1993). While the plaintiff alleges that defendant Baldwin counseled her that retiring and using her pension for her mortgage was "a big mistake", he argues that she does not allege that he otherwise threatened her with any type of injury or harm. In her opposing brief, the plaintiff does not substantively respond to this argument and, instead, simply provides a number of blanket case citations. It is not for the court to make the plaintiff's case for her or otherwise decipher the applicability of the cases cited to by the plaintiff. The plaintiff has made no substantive argument in opposition to defendant Baldwin's motion to dismiss the plaintiff's Thirteenth Amendment claim. As such, defendant Baldwin's motion to dismiss will be granted on this basis and the plaintiff's complaint dismissed with prejudice.

Defendant Baldwin also argues that the plaintiff has failed to state a claim for tortious interference with an employment contract. Defendant Baldwin points out that, under Pennsylvania law, in order to state a claim for tortious interference with an employment contract, a plaintiff must show:

> (1) the existence of a contractual relationship, or prospective contractual relationship, between the complainant and a third party; (2) purposeful action by the defendant, specifically intended to harm the existing relationship, or to prevent a prospective

15

relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) actual legal damage. Pelagatti v. Cohen, 370 Pa.Super. 422, 536 A.2d 1337, 1343 (1987).

Reed v. Chambersburg Area Sch. Dist., 951 F.Supp.2d 706, 728 (M.D.Pa. 2013. In Pennsylvania, at will employment is presumed unless there is a specific contract to the contrary. Nix v. Temple University, 596 A.2d 1132, 1135 (Pa.Super. 1991). "Evidence that the employer offered "a permanent job," "life-long employment," or work on a "long term project" is insufficient, as are claims that are too vague to demonstrate a specific employment term. See Murray v. Commercial Union Ins. Co., 782 F.2d 432, 435 (3d Cir. 1986) (citations omitted). Here, while the plaintiff generally alleges that "[t]here was a longstanding employment contract between Plaintiff and Defendant, Bar", defendant Baldwin argues that the plaintiff has failed to provide sufficient allegations defining any such contract in order to overcome the at-will presumption. In her opposing brief, the plaintiff, again, does not substantively respond to this argument and, instead, simply provides a string of case citations. For the reasons discussed relating to the plaintiff's Thirteenth Amendment claim, defendant Baldwin's motion to dismiss the tortious interference claim will be granted on this basis and the plaintiff's complaint will be dismissed with prejudice.

**B.     Defendant SCBA's Motion to Dismiss**

In its motion to dismiss, defendant SCBA argues that Count Two of the plaintiff's complaint should be dismissed because the plaintiff has not pled sufficient facts to state a claim against it for denying her a federal constitutional or statutory right in terminating her at will employment. The plaintiff alleges in Count Two that because the defendant SCBA essentially conspired with defendant Baldwin, a state actor, defendant SCBA assumed that state actor status. Since the court has dismissed the underlying substantive claim, any such claim based upon agreement or conspiracy must also fail. See Dykes v. Southeastern Pa. Transp. Auth., 68 F.3d 1564, 1570 (3d Cir. 1995) (conspiracy claim need not be reached where underlying substantive claim is dismissed). As such, defendant SCBA's motion to dismiss will be granted in this respect.

Defendant SCBA also argues that the plaintiff has failed to state sufficient facts for a *prima facie* tort or IIED based upon the termination of her employment. To state a cognizable IIED claim, a plaintiff must plead that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; (3) actually caused the distress; and (4) caused distress that was severe. Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1998); Wisniewski v. Johns-Mansville Corp., 812 F.2d 81, 85 (3d Cir. 1987); Mulgrew

v. Sears Roebuck & Co., 868 F. Supp. 98, 103 (E.D. Pa. 1994). To meet this high threshold, the plaintiff must allege conduct that is "so outrageous in character and so extreme in degree as to go beyond all possible grounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998); see also Mulgrew, 868 F. Supp. at 103 (explaining that the conduct must be "so extreme in nature as to go beyond all possible bounds of decency such that it would be regarded as utterly intolerable to civilized society"). Conduct arising in the employment context will rarely rise to the level of outrageousness necessary to support an IIED claim. Hampton v. Tokai Fin. Servs., Inc., 1999 WL 83934, at *3 (E.D. Pa. Feb. 18, 1999); see also Cox, 861 F.2d at 395 ("[I]t must be recognized that it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress."). In addition to requiring that a plaintiff establish that the conduct complained of was outrageous, "the Pennsylvania Supreme Court has required that the plaintiff present competent medical evidence to support the claim." Britt v. Chestnut Hill Coll., 632 A.2d 557, 561 (Pa. Super. 1993).

In this case, even assuming the plaintiff's allegations are true and that defendant SCBA agreed with defendant Baldwin to terminate the plaintiff's

employment in order to appease defendant Baldwin and win his favor, this does not rise to the level of outrageous behavior so as to meet the requirements of a claim for IIED. As such, defendant SCBA's motion to dismiss will be granted in this respect and Count Four of the plaintiff's complaint will be dismissed.

## IV. CONCLUSION

In light of the foregoing, an appropriate order shall issue.

*s/Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 29, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-2008-01.wpd